UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 4:19 CR 907 JAR |
| GERALD CARDWELL, | ) ) ) |
| Defendant. | ) ) |

**GOVERNMENT'S NOTICE OF INTENT AND MOTION TO ADMIT EVIDENCE PURSUANT TO FED. R. EVID. 404(B)**

COMES NOW the United States of America, by and through its attorneys, Sayler A. Fleming, United States Attorney for the Eastern District of Missouri, and Sirena Miller Wissler and Paul D'Agrosa, Assistant United States Attorneys for said District, and provides notice pursuant to Federal Rule of Evidence 404(b) of its intention to admit at trial evidence of prior drug possession by defendant Gerald Cardwell.  The government further seeks entry of an Order *in limine* permitting the government to admit the same.

**STATEMENT OF RELEVANT FACTS**

On July 26, 2019, Maryland Heights (MO) Police were dispatched to the Hollywood Casino Hotel on a report of a man found deceased in hotel room #720.  Visual examination of the deceased revealed a frothy cone about his nose and mouth, consistent with a possible drug overdose.  A significant amount of rigor mortis was noted, suggesting that multiple hours had elapsed since the individual expired.  The deceased was later identified as R.L.  The Office of the St. Louis County Medical Examiner subsequently determined that R.L. died as a result of fentanyl and ethanol

1

intoxication.  A toxicology report revealed that R.L.'s blood also contained methylphenidate.[1]

A check of the hotel registry revealed the room to be registered to defendant Gerald Cardwell ("Cardwell").  Further investigation revealed that Cardwell had checked out of the room around 10:00 a.m.  Prior to checking out, Cardwell had spoken with a housekeeper and advised her that his "friend" was still sleeping in room #720 and that she should not wake him.  Because Cardwell had checked out, housekeeping did attempt to rouse the "friend" verbally, but he did not respond.  Security/emergency medical personnel then responded and located the occupant of room #720 deceased.

Review of hotel's video surveillance revealed that in the early morning hours of July 26, 2019, R.L. was staggering as he walked, his balance and coordination appeared to be severely impaired.  Cardwell is also depicted in the video surveillance driving R.L.'s vehicle and directing R.L. to hotel room #720.  The video depicts Cardwell leaving room #720 at approximately 1000 hours.  He did not return to the room.

Cardwell apparently remained at Hollywood Casino until approximately 1138 hours on July 26, 2019, at which time surveillance video depicts him departing with a female.  Investigators later located and interviewed the female, who reported that she knows Cardwell to be purchasing and distributing fentanyl.  The female did not enter room #720 during the time frame R.L. was in the room.

The investigative team subsequently met with and interviewed a confidential source ("C.S."), who provided text messages between himself and Cardwell in which Cardwell stated he was with his "boy R\*\*\*" and that he (Cardwell) was driving "a brand new 2019 or 2020 Tahoe."[2]  When the recipient

---

[1] Ritalin is the brand name for methylphenidate.  Ritalin and Adderall are similar drugs, treat similar conditions, and are frequently referred to interchangeably.
[2] Cardwell used R.L.'s first name.  At the time of his death, R.L. drove a 2018 Tahoe, which was recovered from the parking lot of the Hollywood Casino.  These text messages were sent and received shortly after midnight on July 26,

of the text asked Cardwell why he was driving, Cardwell responded that he "gave some to [sic] Rodger's and some Adderall and my special mixing [sic] very much and he is TKO."[3] According to C.S., the "special mixture" to which Cardwell was referring is a mixture of fentanyl and Adderall. C.S. also provided information that after leaving Hollywood Casino on July 26, 2019, Cardwell went to Ameristar Casino, 1 Ameristar Blvd, and overdosed on fentanyl in the casino bathroom. Cardwell told the C.S. that he had multiple "caps/buttons" of fentanyl that were collected by Ameristar Casino Security.

The Maryland Heights Police contacted Missouri State Highway Patrol Gaming Officers and confirmed that Cardwell had been located unconscious in the Ameristar Casino bathroom on July 26, 2019. At his feet, they located a baggie containing blue and clear capsules which held an off-white powder. Working with the Missouri State Highway Patrol, the Maryland Heights Police took custody of these capsules and caused them to be transported to the St. Louis County Crime Laboratory. The laboratory determined that the capsules contained fentanyl.

C.S. indicated he knows Cardwell to purchase/ingest and distribute fentanyl. On dates following July 26, 2019, C.S. made two controlled purchases from Cardwell at the behest of the police. The substance Cardwell sold to C.S. on those occasions was later determined by the St. Louis County Crime Laboratory to be fentanyl.

## ARGUMENT

Federal rule of Evidence authorizes the government to admit evidence of Cardwell's prior possession of fentanyl and Adderall. It is axiomatic that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the

---

2019.
[3] "TKO" is commonly understood in the sport of boxing to refer to a "technical knockout."

person acted in accordance with that character." Fed. R. Evid. 404(b)(1). However, evidence of other crimes, wrongs, or acts is admissible if offered "for another purpose" such as "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R. Evid. 404(b); United States v. Halk, 634 F.3d 482, 486 (8th Cir. 2011); United States v. Walker, 428 F.3d 1165, 1169 (8th Cir. 2005). "Rule 404(b) is thus a rule of inclusion rather than exclusion and admits evidence of other crimes or acts relevant to any issue in trial, unless it tends to prove only criminal disposition." United States v. Oaks, 606 F.3d 530, 538 (8th Cir. 2010) (quoting United States v. Simon, 767 F.2d 524, 526 (8th Cir. 1985)); see also United States v. Foster, 344 F.3d 799, 801 (8th Cir. 2003) ("Rule 404(b) is a rule of inclusion; assuming that the other tests for admissibility are satisfied, evidence of a prior crime should be excluded only if its sole relevance goes to the character of the defendant.").

Rule 404(b) evidence is inadmissible "only when the evidence clearly had no bearing on the case and was introduced solely to prove the defendant's propensity to commit criminal acts." Halk, 634 F.3d at 487 (quoting United States v. Walker, 470 F.3d 1271, 1274 (8th Cir. 2006)). It is well established that evidence of other crimes, wrongs, or acts properly is admitted when:

(a) it is relevant to a material issue;

(b) it is similar in kind and not overly remote in time to the crime charged;

(c) it is supported by sufficient evidence; and

(d) its potential prejudice does not substantially outweigh its probative value.

See Oaks, 606 F.3d at 539; United States v. Turner, 583 F.3d 1062, 1066 (8th Cir. 2009). In the instant case, evidence of Cardwell's prior possession of fentanyl and Adderall meets all four criteria and is therefore admissible.

**I. Cardwell's prior possession of fentanyl and Adderall is relevant to a material issue**

This Court must first determine whether Cardwell's prior possession of fentanyl and Adderall is "relevant to a material issue." In order to prove Cardwell guilty beyond a reasonable doubt of the single count in the Indictment, the government must first prove that Cardwell "knowingly and intentionally" distributed a controlled substance to R.L. 21 U.S.C. §841. Obviously, Cardwell has entered a plea of "not guilty," which effectively denies each and every element of the offense charged. Crucially, "[a] general denial defense places the defendant's state of mind at issue." United States v. Gaddy, 532 F.3d 783, 789 (8th Cir. 2008); United States v. Shelledy, 961 F.3d 1014, 1022 (defendant's plea of "not guilty" to drug conspiracy "put his mental state into controversy"). Evidence at trial will establish that R.L. would not have died "but for" his ingestion of fentanyl. Further evidence will reveal that toxicology tests also revealed the presence of methylphenidate in R.L.'s blood. Cardwell's prior possession (and his admitted use) of fentanyl and Adderall is certainly relevant to Cardwell's knowledge of these particular drugs. United States v. Logan, 121 F.3d 1172, 1178 (8th Cir. 1997) ("evidence of prior possession of drugs, even in an amount consistently only with personal use, is admissible to show such things as knowledge and intent of a defendant charged with a crime in which intent to distribute drugs is an element."); Shelledy, 961 F.3d at 1022 (evidence of defendant's prior drug convictions relevant to defendant's "knowledge of, and intent to participate in, the [drug] conspiracy"). Clearly, evidence of Cardwell's prior possession of fentanyl and Adderall is relevant to his knowledge and intent.

**II. Cardwell's previous possession of fentanyl and Adderall is similar in kind and not remote in time to the offense charged**

The Court must next consider the temporal proximity between Cardwell's prior possession of fentanyl and Adderall and the offense charged. In order to be admissible, the government's proffered evidence must be "similar in kind and not remote in time" to the offense charged. As

to the first of these requirements, there can be no dispute that Cardwell's past conduct is "similar in kind" to the offense charged.[4] The government intends to admit evidence of multiple incidents, occurring in 2015, 2016, and 2017, in which Cardwell was discovered to be in possession of fentanyl and/or Adderall.[5]

In June 2015, Cardwell was discovered to be in possession of Adderall following a traffic stop in St. Peters, MO.  Although Cardwell attempted to destroy the Adderall before police could discover them, police recovered fragments of the pills.  During a post-Miranda interview with St. Peters Police, Cardwell admitted that he attempted to destroy the Adderall because they were not prescribed to him.  Cardwell further acknowledged that he had been distributing drugs for "approximately one year" and that he received oxycodone from multiple people and then sold them for between $5 and $15 per pill.

On December 12, 2016, the O'Fallon (MO) Police Department responded to a QuickTrip convenience store on a report of a suspicious vehicle.  Police approached the vehicle and made contact with its occupants, including passenger Gerald Cardwell.  The driver of the vehicle granted consent for a search, during which officers located a number of items of drug paraphernalia and suspected controlled substances.  Cardwell and the driver were arrested and Cardwell was placed in a patrol vehicle and transported to the O'Fallon Police station.  Upon arrival, the officer noticed a torn plastic bag containing a white powder located above the door handle.  The object had not been there during an earlier search.  Cardwell spontaneously stated, "that's for you," and volunteered, "it's fentanyl."  A laboratory test conducted by the St. Charles

---

[4] Although Cardwell is not charged specifically with distribution of fentanyl (or any specific substance, for that matter), evidence at trial including Cardwell's own text messages will reveal that Cardwell distributed a mixture of fentanyl and Adderall to R.L., causing his death.

[5] The investigative reports detailing these incidents were provided to counsel for Cardwell with the initial discovery.

County Criminalistics Laboratory confirmed the substance to be fentanyl and acetyl-fentanyl. During a post-Miranda interview, Cardwell admitted that the fentanyl was his and that it was already in his possession when the driver of the vehicle picked him up. Cardwell further admitted that he was addicted to painkillers (specifically, fentanyl) and that he used a "quarter gram" of fentanyl per day.

On February 9, 2017, two Maryland Heights Police officers were patrolling the parking garage at the Hollywood Casino following complaints about narcotics activity occurring there. They noted a parked vehicle in the parking lot and observed that it was running and the driver was slumped over and "appeared to be sleeping." The officers woke the driver, Gerald Cardwell, by knocking on the window. Cardwell advised that he was waiting on a friend and had fallen asleep. The officers observed that as he spoke, Cardwell's body twitched and he exhibited signs that he was under the influence of drugs. When the officers asked Cardwell whether he was on any medication, Cardwell advised that he was on "several" as a result of previous injuries. Cardwell acknowledged that he had been arrested previously for issues relating to prescription medication.

Cardwell was asked if he had any illegal items in his vehicle. He responded that he did not and gave consent for a search of the vehicle. Cardwell volunteered that he had a pistol, which officers located in the vehicle and secured. They also located a prescription bottle with no label containing multiple pills. Cardwell advised that they were Adderall pills and that he did not have a prescription for them. During a post-Miranda interview conducted following his arrest, Cardwell again acknowledged possession of the Adderall and estimated that there were

approximately 200 pills in the bottle.[6]  He again admitted that he did not have a prescription for Adderall and advised that he bought them from a female in Florissant for $1 each.

On August 7, 2018, Cardwell pled "guilty" to one count of Possession of a Controlled Substance and one count of Unlawful Use of a Weapon in the 22nd Judicial Circuit Court in and for St. Louis County, Missouri, in case number 17SL-CR08554-01.  These charges arose out of Cardwell's arrest by Maryland Heights Police on February 9, 2017.

Cardwell's prior possession of fentanyl and/or Adderall occurred in 2015, 2016, and 2017.  The most remote of these incidents transpired some 6 years prior to trial here.  This evidence is certainly not unduly remote as to the crime charged. See, United States v. Shoffner, 71 F.3d at 1433 (prior bad act from six years earlier was not too remote in time); United States v. McCarthy, 97 F.3d 1562, 1573 (8th Cir. 1996), cert. denied, Thompsen v. United States, 519 U.S. 1139, 117 S.Ct. 1011 (1997) (holding 17-year-old conviction not too remote in time); United States v. Burkett, 821 F.2d 1306, 1309-10 (8th Cir. 1987) (holding seven-year-old prior bad acts not too remote in time); United States v. Engelman, 648 F.2d 473, 479 (8th Cir. 1981) (holding 13-year-old offense not too remote in time).

The Eighth Circuit has made clear that "proximity in time is a factor in deciding whether to admit 404(b) evidence, but there is no fixed period within which the prior acts must have occurred." United States v. Baker, 82 F.3d 273, 276 (8th Cir. 1996), cert. denied, 519 U.S. 1020, 117 S.Ct. 538 (1996); see also Burkett, 821 F.2d at 1310 ("[T]here is no specific number of years beyond which prior bad acts are no longer relevant to the issue of intent").  Given the significant similarity between Cardwell's 2015, 2016, and 2017 conduct and the conduct alleged in the Indictment, and given the

---

[6] A subsequent count revealed there to be 150 pills in the bottle.

8

temporal relationship between those events, evidence as to Cardwell's prior possession of fentanyl and Adderall is admissible to prove knowledge and intent.

### III. Evidence of Cardwell's prior possession of fentanyl and Adderall is supported by sufficient evidence

The Court must next determine whether the government's proposed 404(b) evidence is supported by sufficient evidence.  Here, the government intends to present the testimony of the officers involved in the aforementioned incidents.  In some instances, their testimony is corroborated by written and/or recorded statements made by Cardwell himself.  The 2017 incident at the Hollywood Casino is further corroborated by Cardwell's criminal conviction in case 17SL-CR08554-01.  Given the availability of witnesses with firsthand knowledge of Cardwell's prior possession of fentanyl and/or Adderall – and his admissions to the same – the proffered conduct is supported by sufficient evidence.

### IV. The potential prejudice of the evidence does not substantially outweigh its probative value.

Before admitting evidence of Cardwell's prior possession of fentanyl and Adderall pursuant to Rule 404(b), this Court must examine whether the potential prejudice of that evidence *substantially* outweighs its probative value.  Where, as here, the "defendant makes a general denial defense, [he] necessarily places the defendant's state of mind at issue." United States v. Samuels, 611 F.3d 914, 918 (8th Cir. 2010).  Given the government's burden to prove Cardwell's state of mind, and the relative obscurity of one of the drugs discovered in R.L.'s blood, evidence as to Cardwell's prior possession of that drug is highly probative.   To minimize the risk of any *unfair* prejudice, the government will propose an instruction regarding the limited purposes for which the evidence of defendant's prior acts may be used.

## CONCLUSION

For the foregoing reasons, the government respectfully requests that this Court enter an Order *in limine* permitting it to admit, at trial, evidence as to prior possessions of fentanyl and Adderall on the part of Gerald Cardwell.

Respectfully submitted,

SAYLER A. FLEMING
United States Attorney


/s/ Sirena Miller Wissler
SIRENA MILLER WISSLER #55374MO
PAUL D'AGROSA #64805MO
Assistant United States Attorney
111 S. 10th Street, 20th Floor
St. Louis, MO  63102
(314) 539-2200
Sirena.wissler@usdoj.gov


## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of July, 2021, the foregoing was filed electronically with the Clerk of the Court, to be served by operation of the Court's electronic notification system upon Jeffrey Goldfarb, attorney for defendant Gerald Cardwell.

/s/ Sirena Miller Wissler