UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| v. | ) No. 4:19 CR 907 JAR |
| GERALD CARDWELL, | ) |
| Defendant. | ) |

**GOVERNMENT'S SUPPLEMENTAL NOTICE OF INTENT AND
MOTION TO ADMIT EVIDENCE PURSUANT TO
FED. R. EVID. 404(b)**

COMES NOW the United States of America, by and through its attorneys, Sayler A. Fleming, United States Attorney for the Eastern District of Missouri, and Sirena Miller Wissler and Paul D'Agrosa, Assistant United States Attorneys for said District, and provides supplemental notice pursuant to Federal Rule of Evidence 404(b) of its intention to admit at trial evidence of prior drug use, possession, and sales by defendant Gerald Cardwell. The government further seeks entry of an Order *in limine* permitting the government to admit the same.

**STATEMENT OF RELEVANT FACTS[1]**

On July 26, 2019, Maryland Heights (MO) Police were dispatched to the Hollywood Casino Hotel on a report of a man found deceased in hotel room #720. The deceased was later identified as R.L. The Office of the St. Louis County Medical Examiner subsequently determined that R.L. died as a result of fentanyl and ethanol intoxication. A toxicology report revealed that R.L.'s blood also

---

[1] The government provides this abbreviated recitation of facts and incorporates by reference the entirety of the Statement of Relevant Facts contained in its original Notice of Intent and Motion to Admit Evidence Pursuant to Fed. R. Evid. 404(b).  (Doc. # 70).

1

contained methylphenidate.[2]

Room #720 was registered to defendant Gerald Cardwell ("Cardwell"). Cardwell had checked out of the room around 10:00 a.m. Prior to checking out, Cardwell had spoken with a housekeeper and advised her that his "friend" was still sleeping in room #720 and that she should not wake him.[3] Housekeeping revisited the room shortly after noon but entered only far enough to see R.L.'s feet and legs. When employees returned to room #720 for a third time around 3:00 p.m., they discovered R.L. unresponsive and he was pronounced deceased.

Cardwell apparently remained at Hollywood Casino until approximately 1138 hours on July 26, 2019, at which time surveillance video depicts him departing with a female. Investigators later located and interviewed the female, T.D., who reported that she knew Cardwell to be purchasing, using, and distributing fentanyl. T.D. advised that she had known Cardwell for approximately 6 months, and they frequented casinos together. T.D. specifically reported that she had seen Cardwell crush and snort pills with a dollar bill. When asked whether Cardwell was mixing drugs together, T.D. responded that she "didn't want anything to do with that." T.D. stated that Cardwell uses "pain pills" and Adderall. She also stated that she had seen Cardwell make drug sales "maybe three or four times" and she had driven him downtown to buy and sell drugs.[4] T.D. said she had seen Cardwell sell drugs at the casino and out of his van.

Police also interviewed A.B., who reported that she had met Cardwell in 2015 through her then-husband. A.B. advised police that she knew Cardwell sold drugs out of the casino. She said she had personally seen Cardwell sell fentanyl and that Cardwell used to come to her home and ingest

---

[2] Ritalin is the brand name for methylphenidate. Ritalin and Adderall are similar drugs, treat similar conditions, and are frequently referred to interchangeably.
[3] Hotel surveillance video depicts Cardwell leaving room #720 at approximately 10:00 a.m.
[4] T.D. recalled the occasion on which she had driven Cardwell downtown had occurred "4-5 months" prior to her September 2019 interview with police.

fentanyl in her kitchen. She further stated that she had seen Cardwell selling heroin, fentanyl, Oxycodone, and Adderall. A.B. admitted that she had purchased Adderall from Cardwell and on occasion, Cardwell would attempt to purchase Adderall (for which she had a prescription) from her. A.B. stated that Cardwell frequents the Hollywood Casino and his parents' home on Pinehurst View in O'Fallon, Missouri.

The investigative team also interviewed a confidential source ("C.S."), who provided text messages between him/herself and Cardwell in which Cardwell stated he was with his "boy R***" and that he (Cardwell) was driving "a brand new 2019 or 2020 Tahoe."[5] When the recipient of the text asked Cardwell why he was driving, Cardwell responded that he "gave some to [sic] Rodger's and some Adderall and my special mixing [sic] very much and he is TKO."[6] According to C.S., the "special mixture" to which Cardwell was referring is a mixture of fentanyl and Adderall. C.S. also provided information that after leaving Hollywood Casino on July 26, 2019, Cardwell went to Ameristar Casino and "overdosed" in the casino bathroom. Cardwell told the C.S. that he had multiple "caps/buttons" of fentanyl that were collected by Ameristar Casino Security.

The C.S. reported that Cardwell had been selling drugs for 12-15 years. The C.S. acknowledged that he himself had a drug problem and that Cardwell was his regular source of supply for fentanyl. According to the C.S., he had purchased heroin and/or fentanyl from Cardwell approximately "100 times" and did so about twice a week. The C.S. reported that Cardwell sold primarily fentanyl.

The Maryland Heights Police contacted Missouri State Highway Patrol Gaming Officers and confirmed that Cardwell had been located unconscious in the Ameristar Casino bathroom on July

---

[5] Cardwell used R.L.'s first name. At the time of his death, R.L. drove a 2018 Tahoe, which was recovered from the parking lot of the Hollywood Casino. These text messages were sent and received shortly after midnight on July 26, 2019.

[6] "TKO" is commonly understood in the sport of boxing to refer to a "technical knockout."

26, 2019.  At his feet they located a baggie containing blue and clear capsules which contained an off- white powder.   Working with the Missouri State Highway Patrol, the Maryland Heights Police took custody of these capsules and caused them to be transported to the St. Louis County Crime Laboratory.  The laboratory determined that the capsules contained fentanyl.

On dates following July 26, 2019, C.S. made two controlled purchases from Cardwell at the behest of the police.  The first of these controlled purchases occurred on July 31, 2019.  It was arranged via text messages.  The resulting transaction was audio and video recorded.  The second controlled purchase occurred on August 6, 2019.  It was arranged by telephone.  Like the first controlled purchase, the second was audio and video recorded.  The substance Cardwell sold to C.S. on both July 26, 2019 and August 6, 2019 was later confirmed by the St. Louis County Crime Laboratory to be fentanyl.

The C.S. advised police that after R.L.'s death, he had a conversation with Cardwell in which Cardwell instructed him that if asked, he should say that there were "no drugs" used on the night R.L. died.  Cardwell also told the C.S. that the only way he (Cardwell) could get in trouble is if "somebody testifies."  Cardwell then stated, "I will kill you or make sure someone kills you" before discussing a friend who lives in Hazelwood who has "no fear of putting a red dot[7] on your head." When the C.S. tried to make light of Cardwell's comment, Cardwell assured the C.S. that he was serious and that he had already discussed the matter with his friend from Hazelwood.

Maryland Heights Police arrested Cardwell on October 22, 2019.  Cardwell was operating a white Town and Country van.  During a search incident to arrest, police located two loose orange pills in Cardwell's pocket. He spontaneously stated, "That's my Adderall.  I have a prescription." Police then interviewed Cardwell's passenger, A.M.  A.M. reported that she had met Cardwell a few

---

[7] "Red Dot" commonly refers to the laser sighting of a firearm.

months earlier, after R.L. had died. A.M. admitted that Cardwell had been supplying her with heroin/fentanyl and that he had given her "4 pills" of heroin/fentanyl on the previous day. Among Cardwell's belongings, police located a prescription bottle in Cardwell's name for generic Adderall.

**ARGUMENT**

As a preliminary matter, the government does not concede that some of the above-referenced evidence constitutes "404(b)" evidence. Rather, specifically as it relates to evidence of possession of fentanyl at the Ameristar Casino on July 26, 2019, the government submits this evidence is relevant and admissible to the charged offense. Out of an abundance of caution, however, and in order to avoid any later claim that the government was required to provide specific notice of its intent to admit evidence of Cardwell's possession of fentanyl at the Ameristar Casino on July 26, 2019, the government has included that evidence herein and any required notice is here given.

Federal Rule of Evidence authorizes the government to admit evidence of Cardwell's prior possession, use, and distribution of fentanyl and Adderall. It is axiomatic that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with that character." Fed. R. Evid. 404(b)(1). However, evidence of other crimes, wrongs, or acts is admissible if offered "for another purpose" such as "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R. Evid. 404(b); United States v. Halk, 634 F.3d 482, 486 (8th Cir. 2011); United States v. Walker, 428 F.3d 1165, 1169 (8th Cir. 2005). "Rule 404(b) is thus a rule of inclusion rather than exclusion and admits evidence of other crimes or acts relevant to any issue in trial, unless it tends to prove only criminal disposition." United States v. Oaks, 606 F.3d 530, 538 (8th Cir. 2010) (quoting United States v. Simon, 767 F.2d 524, 526 (8th Cir. 1985)); see also United States v. Foster, 344 F.3d 799, 801 (8th Cir. 2003) ("Rule 404(b) is a rule of inclusion; assuming that the other tests

for admissibility are satisfied, evidence of a prior crime should be excluded only if its sole relevance goes to the character of the defendant.").

Evidence of other crimes, wrongs, or acts properly is admitted when:

(a) it is relevant to a material issue;

(b) it is similar in kind and not overly remote in time to the crime charged;

(c) it is supported by sufficient evidence; and

(d) its potential prejudice does not substantially outweigh its probative value.

See Oaks, 606 F.3d at 539; United States v. Turner, 583 F.3d 1062, 1066 (8th Cir. 2009).  In the instant case, evidence of Cardwell's prior possession of fentanyl and Adderall meets all four criteria and is therefore admissible.

The evidence proffered by way of this Supplemental Notice essentially falls into three categories:

- Evidence of Cardwell's prior *use* of fentanyl and Adderall on dates not charged in the Indictment;
- Evidence of Cardwell's prior *possession* of fentanyl and/or Adderall on dates both charged and not charged in the Indictment, and;
- Evidence of Cardwell's prior *distribution* of fentanyl and/or Adderall on dates not charged in the Indictment.

The government hereby incorporates by reference the entirety of its argument relating to the admissibility of the evidence outlined in its original Notice of Intent and Motion to Admit Evidence Pursuant to Fed. R. Evid. 404(b)(Doc. # 70).  That document undertakes to analyze the admissibility of Cardwell's "prior bad acts" pursuant to Rule 404(b).  The government submits that the same analysis applies to *all* of the government's proposed 404(b) evidence, including the evidence contained in this Supplemental Notice and Motion.  For the reasons outlined in the government's original motion, evidence

of Cardwell's prior use, possession, and distribution of fentanyl and Adderall – including his admissions to the same – are relevant to a material issue, similar in kind and not overly remote in time to the crime charged, supported by sufficient evidence, and its potential prejudice does not substantially outweigh its probative value. The government intends to present this proposed 404(b) evidence in the form of *eyewitness* testimony and photographic evidence. In at least one instance, the government may seek to admit a video recording of defendant's admissions. With the exception of a single statement (that Cardwell had been selling drugs for 12-15 years), all of the government's proposed 404(b) evidence relates to events occurring within four years of the conduct charged in the Indictment, and within six years of the upcoming trial date. Clearly, this evidence is not overly remote in time.

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in the government's Notice and Motion to Admit Evidence Pursuant to Rule 404(b) (Doc. #70), the government respectfully requests that this Court enter an Order *in limine* permitting it to admit at trial evidence as to prior use, possession, and distribution of fentanyl and Adderall on the part of Gerald Cardwell as outlined herein.

Respectfully submitted,

SAYLER A. FLEMING
United States Attorney


/s/ Sirena Miller Wissler
SIRENA MILLER WISSLER #55374MO
PAUL D'AGROSA #36966MO
Assistant United States Attorney
111 S. 10th Street, 20th Floor
St. Louis, MO  63102
(314) 539-2200
Sirena.wissler@usdoj.gov

## CERTIFICATE OF SERVICE

    I hereby certify that on this 17th day of September, 2021, the foregoing was filed electronically with the Clerk of the Court, to be served by operation of the Court's electronic notification system upon Jeffrey Goldfarb, attorney for defendant Gerald Cardwell.

                                                 /s/ Sirena Miller Wissler